**Harry SIPE, Plaintiff,**

v.

**LOCAL UNION NO. 191 UNITED BROTHERHOOD OF CARPENTERS AND JOINERS OF AMERICA, etc., et al., Defendants.**

**No. 74–455 Civil.**

United States District Court,
M. D. Pennsylvania.

March 19, 1975.

Gerald E. Ruth, York, Pa., for plaintiff.

Bruce E. Endy, Bernard N. Katz, Meranze, Katz, Spear & Wilderman, Philadelphia, Pa., for defendant Local 191, United Brotherhood of Carpenters and Joiners of America.

Donn I. Cohen, Liverant, Senft & Cohen, York, Pa., for defendants John C. Hollinger, William Thomas Stephens, Harry E. Ness, Jr. and Dwight Bortner.

Leonard M. Sagot, Thomas W. Jennings, Ettinger, Poserina, Silverman, Dubin, Anapol & Sagot, Philadelphia, Pa., for defendants United Brotherhood of Carpenters and Joiners of America and Raleigh Rajoppi.

SHERIDAN, Chief Judge.

This action arises as a result of the removal of plaintiff from his office as Business Representative of Local 191, United Brotherhood of Carpenters and Joiners (Local), the imposition of a fine, and the prohibition to run for or to hold any Union office for three years. Plaintiff contends: the Union's adjudicative procedure was fraudulent and inadequate, both legally and within the context of the Union Constitution and Laws; the trial and review tribunals were biased; there was an unlawful conspiracy to violate plaintiff's rights under the Labor-Management Reporting and Disclosure Act of 1959 (the LMRDA) and under the Union Constitution and Laws; and there was an unlawful conspiracy to deprive plaintiff of his employment as a carpenter. All individual defendants are charged with participation in each of these combinations, and through certain of them, the defendants Local and International Brotherhood of Carpenters and Joiners (International) are also charged. Plaintiff claims that he was damaged in the following ways: loss of salary as a Business Representative and as a carpenter, loss of his right to qualify for a pension, prohibition against running for or holding union office, fine, anguish, humiliation, embarrassment and severe trauma to his nerves and nervous system. Plaintiff also seeks punitive damages.

Each defendant has filed motions to dismiss under Rule 12. The primary question is whether the complaint states a claim.

"... In appraising the sufficiency of the complaint we [should] follow ... the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 1957, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80.

## I. FEDERAL QUESTION JURISDICTION

An issue raised in each motion is whether the court has jurisdiction over the subject matter. There being no di-

versity of citizenship between the parties, this suit is predicated upon a finding that it arises under the Federal Constitution or laws. Plaintiff invokes the LMRDA as the basis for the action.

The only federal question jurisdiction rights here relevant which a plaintiff may seek to redress originally in a United States District Court under the LMRDA are those given in its Title I, sections 101, 102 and 609, 29 U.S.C.A. §§ 411, 412, 529. The first two are designated the labor "bill of rights" sections of the LMRDA and protect union members in their rights of free speech and elections and safeguard against improper disciplinary action. The third section prohibits disciplinary action against any union member for the exercise of his rights under the bill of rights. Section 102, 29 U.S.C.A. § 412, provides for a civil action in the United States District Court by any member whose § 101, 29 U.S.C.A. § 411, rights have been violated. *See* Grove v. Glass Bottle Blowers Ass'n, W.D.Pa.1971, 329 F.Supp. 337.

The other remedy, here irrelevant, created by the LMRDA is in Title IV, 29 U.S.C.A. §§ 481 and 482. There, Congress sought to affect the affairs of labor organizations. Section 401, 29 U. S.C.A. § 481, covers, inter alia, the election and removal of union officers while § 402, 29 U.S.C.A. § 482, provides an enforcement mechanism. Under this provision a member of a labor organization who feels aggrieved files a complaint with the Secretary of Labor setting forth the violation. After an investigation, the Secretary may bring suit in a district court. *See* McDonough v. Local 825 Operating Engineers, 3 Cir. 1972,

470 F.2d 261, 263–64. This mechanism, with one exception not here relevant,[1] is the exclusive method for protecting Title IV rights.[2] Calhoon v. Harvey, 1964, 379 U.S. 134, 140, 85 S.Ct. 292, 13 L. Ed.2d 190.

For subject matter jurisdiction, therefore, this inquiry must first address itself to whether the rights plaintiff alleges to have been violated are in Titles I or IV. Since this suit is brought by a member of a union, rather than the Secretary of Labor, it must find its jurisdictional basis in Title I.

■ In Sheridan v. Carpenters Local 626, 3 Cir. 1962, 306 F.2d 152, in what has been accepted as the definitive statement of the law in this circuit, *see* Martire v. Laborers' Local 1058, 3 Cir. 1969, 410 F.2d 32, 35, cert. denied 1969, 396 U.S. 903, 90 S.Ct. 216, 24 L.Ed.2d 179, the court held, "It is the union-member relationship, not the union-officer or union-employee relationship, that is protected" by Title I. 306 F.2d at 157. Thus, when a right of an individual as a union member is violated, Title I, properly invoked, provides jurisdiction, and the aggrieved member may become the plaintiff in a federal suit. On the other hand, when some other right—such as an individual's rights as an employee or as an officer of a union—is asserted to have been breached, some other jurisdictional nexus must be found. Sheridan v. Carpenters Local 626, supra, 306 F.2d at 156.

*Sheridan* held that the removal of a business agent, prior to the expiration of his term, did not create a cause of action under Title I.[3]

1. Section 401(c) of the LMRDA permits suits prior to election in the United States District Courts by any bona fide candidate for union office to enforce the rights, guaranteed by that section, to equal treatment in the distribution of campaign literature and access to membership lists. 29 U.S.C.A. § 481(c).

2. An aggrieved union member may also bring suit in federal court claiming that in declining to act on an allegation of a Title IV vio-

lation, the Secretary of Labor acted arbitrarily, capriciously, or in abuse of his discretion. Bachowski v. Brennan, 3 Cir. 1974, 502 F.2d 79. *A fortiori* a condition precedent to the bringing of such an action would be making a complaint originally to the Secretary of Labor. This suit is not against the latter, and the condition precedent has not been satisfied.

3. We note that other circuits have held that removing an officer from his union office as

" . . . [N]either under the 'Bill of Rights' provisions of Title I, nor under Section 609, proscribing disciplinary sanctions against union members, is plaintiff's status as business agent protected by the act. . . ." 306 F.2d at 157.

*Martire* adhered to this ruling. 410 F. 2d at 35. This case went on to hold, however, that the imposition of a penalty which barred a deposed union officer from again holding an office in the union for a period of years *did* affect his rights as a union member. *Id.; accord,* Schonfeld v. Penza, 2 Cir. 1973, 477 F.2d 899, 904. Thus, such a penalty provides a cause cognizable in a district court in a suit brought by the former officer.

In addition, *Martire* also held that the imposition of a fine on a deposed officer, could under certain circumstances constitute an interference with his rights as a union member. The determinant, said the court, was whether the sanction for failure to pay the fine was expulsion. If so, the penalty would affect membership rights protected by Title I. 410 F.2d at 35.

█ In the present case, plaintiff was removed from his position as business representative of the Local. This concededly could be the basis of a Title IV—not Title I—action. Additionally, however, plaintiff was barred from running for office for a period of three years and fined $100 on pain of expulsion. These, it is clear, do interfere with plaintiff's rights as a union member and thus provide the jurisdictional basis for a suit in this court.

"The well established practice . . . has been that the assertion of a substantial claim under a federal statute gives a United States court jurisdiction of that claim even though that court may determine ultimately that no cause of action on which relief could have been granted was alleged. . . . We hold . . . that a United States district court has jurisdiction to determine the validity of any substantial claim asserted under the 'Bill of Rights' subchapter of the Labor-Management Reporting and Disclosure Act of 1959 even though it may determine ultimately that the claim is not one upon which relief may be granted." Hughes v. Local 11, Ironworkers, 3 Cir. 1961, 287 F.2d 810, 814, cert. denied 1961, 368 U.S. 829, 82 S.Ct. 51, 7 L.Ed.2d 32. (Citations omitted.)

Having determined that at least two of the claims state a federal cause of action, it now becomes appropriate to determine whether the others should be heard as well. The discretionary power of the court to hear and determine claims not independently cognizable in a federal court is set out in UMW v. Gibbs, 1966, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218:

" . . . Pendent jurisdiction, in the sense of judicial *power*, exists whenever there is a claim 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their

---

punishment for his having exercised a right guaranteed by Title I does create a cause of action cognizable in a federal district court. Schonfeld v. Penza, 2 Cir. 1973, 477 F.2d 899; Sewell v. Grand Lodge of Int'l Ass'n of Machinists, 5 Cir. 1971, 445 F.2d 545, cert. denied 1972, 404 U.S. 1024, 92 S.Ct. 674, 30 L.Ed.2d 674; Wood v. Dennis, 7 Cir. 1973, 489 F.2d 849 (en banc), cert. denied 1974, 415 U.S. 960, 94 S.Ct. 1490, 39 L.Ed.2d 575; Grand Lodge of Int'l Ass'n of Machinists v. King, 9 Cir. 1964, 335 F.2d 340, cert. denied 1964, 379 U.S. 920, 85 S.Ct. 274, 13 L.Ed.2d 334. However, in such a case, it would be the plaintiff's statutorily guaranteed privilege as a union member to exercise Title I rights which had been interfered with; the fact that the method chosen to interfere was to depose him from office would not divest the court of jurisdiction. *See* Amalgamated Clothing Workers Rank and File Committee v. Amalgamated Clothing Workers, Philadelphia Joint Board, 3 Cir. 1973, 473 F.2d 1303; DeCampli v. Greeley, D.N.J.1968, 293 F.Supp. 746. Here the complaint does not set forth such an underlying motivation, nor has it been alluded to in any brief.

Authority . . . ,' U.S.Const., Art. III, § 2, and the relationship between that claim and the state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' The federal claim must have substance sufficient to confer subject matter jurisdiction on the court. . . . The state and federal claims must derive from a common nucleus of operative fact. But if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding, then, assuming substantiality of the federal issues, there is *power* in federal courts to hear the whole." (Footnotes omitted.)

■ This doctrine, pendent or ancillary jurisdiction, is useful when an essentially non-federal cause of action is sought to be brought within the purview of a federal court. *See* Deaktor v. Fox Grocery Co., W.D.Pa.1971, 332 F.Supp. 536, aff'd 3 Cir. 1973, 475 F.2d 1112, cert. denied 1973, 414 U.S. 867, 94 S.Ct. 65, 38 L.Ed.2d 86. It is discretionary with the trial judge, whether to exercise his power under pendent jurisdiction and hear a second cause of action arising from the same set of circumstances as the first:

". . . The doctrine of pendent jurisdiction refers to the resolution of state and federal claims in one action. There is here no contention that the first cause of action presents a state cause of action. Ancillary jurisdiction is, as its name implies, the exercise of jurisdiction over certain peripheral aspects of a controversy that by themselves would not be cognizable in federal court. . . . [T]he precise perimeters of these two forms of federal jurisdiction are not clear . . . . The theory behind both

doctrines is that subsidiary matters should be determined in the same action as the main claim. . . ." Bay Guardian Co. v. Chronicle Publishing Co., N.D.Cal.1972, 340 F.Supp. 76, 79.

Thus, for the court to exercise its discretion, a state claim must be shown, arising from the same facts as the dominant federal claim.

■ Here, however, the claim sought to be brought under the umbrella of pendent jurisdiction is not a cause of action which the plaintiff can assert in another court; it is one which he has no standing to assert in any court. Only the Secretary of Labor has standing to bring an action, under circumstances such as these, alleging a violation of plaintiff's Title IV rights. Calhoon v. Harvey, supra, 379 U.S. at 140, 85 S.Ct. 292. The Third Circuit limited its decision in *Martire* by holding that prohibition to run for office did create a cause of action in a deposed union officeholder.[4] 410 F.2d at 35. With regard to the plaintiff's removal from office—a claim asserted and attacked in *Martire* and here—the court was careful *not* to uphold jurisdiction, except "on the narrow ground . . . that Martire's being barred from holding office in Local Union for a term of five years affects his rights *qua* union member; otherwise stated, his union-member relationship." 410 F.2d at 35–36. Thus, presented with the opportunity to allow pendent jurisdiction under facts as here, the Third Circuit declined. The Supreme Court, in Trbovich v. UMW, 1972, 404 U.S. 528, 92 S.Ct. 630, 30 L.Ed.2d 686, refused to allow an individual even to intervene in a suit brought by the Secretary of Labor to enforce the individual's rights, except to "present evidence and argument in support of the Secretary's complaint."[5] 404 U.S. at

4. The court also held by way of dictum that imposition of a fine on pain of expulsion—as here alleged—would create a cause of action.

5. Another appropriate instance for intervention by an individual union officer is where he seeks to join himself as defendant in an

537, 92 S.Ct. at 635. With regard to any claims which the Secretary has not previously found to be of merit, the Court said:

> " . . . [T]o require the union to respond to these claims would be to circumvent the screening function assigned by statute to the Secretary. . . . [W]e think Congress intended to insulate the union from any complaint that did not appear meritorious to both a complaining member and the Secretary. Accordingly, we hold that in a post-election enforcement suit, Title IV imposes no bar to intervention by a union member, so long as that intervention is limited to the claims of illegality presented by the Secretary's complaint." 404 U.S. at 537, 92 S.Ct. at 635 (Footnote omitted.)

Accordingly, the motions to dismiss will be granted as to those parts of the complaint relating to plaintiff's removal from office.

 The fourth cause of action set forth in the complaint charges a conspiracy by the defendants to deprive plaintiff of his livelihood as a carpenter and to discriminate against him in job referrals. Neither the complaint nor plaintiff's brief shows that this is factually related to the other three claims. The court's jurisdiction is grounded in 29 U.S.C.A. §§ 401–440, according to the complaint, but plaintiff specifies no basis for this particular cause within these sections. Moreover, since the claims found to be federal and this claim do not "derive from a common nucleus of operative fact," UMW v. Gibbs, supra, 383 U.S. at 725, 86 S.Ct. at 1138, this is not a case in which it is appropriate to exercise the court's discretion under the doctrine of pendent jurisdiction.

## II. PUNITIVE DAMAGES

A second contention common to each defendant's subject matter jurisdiction attack concerns plaintiff's claim for punitive damages. Section 102, 29 U.S.C.A. § 412, provides:

> "Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for *such relief . . . as may be appropriate . . . .*" (Emphasis supplied.)

The parties do not dispute that if there were an actionable violation of Title I rights, plaintiff would be entitled to recover actual damages.

██ ██ There is some authority that punitive damages are not allowable in this type of action. Magelssen v. Local 518, Operative Plasterers, W.D.Mo.1965, 240 F.Supp. 259 (alternative holding); Burris v. International Bhd. of Teamsters, D.N.C.1963, 224 F.Supp. 277. However, "[t]he better reasoned cases would permit such a recovery on the theory that the award of exemplary damages in appropriate cases serves as a deterrent to those abuses which Congress sought to prevent." Sands v. Abelli, S.D.N.Y.1968, 290 F.Supp. 677 (footnote omitted). Accordingly, courts allow punitive damages where there is "actual malice or wreckless [sic] or wanton indifference to the rights of the plaintiff." International Bhd. of Boilermakers v. Braswell, 5 Cir. 1968, 388 F.2d 193, 199, cert. denied 1968, 391 U.S. 935, 88 S.Ct. 1848, 20 L.Ed.2d 854. *Accord,* Robins v. Schonfeld, S.D.N.Y.1971, 326 F.Supp. 525; Patrick v. I. D. Packing Co., Inc., S.D.Iowa 1969, 308 F.Supp. 821; Born v. Cease, D.Alas.1951, 101 F.Supp. 473, 13 Alaska 518, aff'd sub nom. Born v. Laube, 9 Cir. 1954, 213 F.2d 407, 15 Alaska 60, cert. denied 1954, 348 U.S. 855, 75 S.Ct. 80, 99 L.Ed. 674; *see* Hall v. Cole, 1973, 412 U.S. 1, 3–4, n. 3, 93 S. Ct. 1943, 36 L.Ed.2d 702; Eisman v. Baltimore Regional Joint Board of the Amalgamated Clothing Workers, D.Md.

---

action by the Secretary to set aside the election which originally seated the intervenor.

Hodgson v. Carpenters Resilient Flooring Local 2212, 3 Cir. 1972, 457 F.2d 1364.

1972, 352 F.Supp. 429, aff'd 4 Cir. 1974, 496 F.2d 1313. Compare Fulton Lodge No. 2 of International Association of Machinists v. Nix, 5 Cir. 1969, 415 F.2d 212, 220 n. 23, aff'g in part, N.D.Ga. 1967, 262 F.Supp. 1000, cert. denied 1972, 406 U.S. 946, 92 S.Ct. 2044, 32 L. Ed.2d 332, *with* Int'l Bhd. of Boilermakers v. Braswell, supra. Here the complaint charges that the action taken was intended to interfere with Title I rights "pursuant to a conspiracy to violate plaintiff's rights." Therefore, we cannot say at this juncture that plaintiff will be unable to prove the requisite malice.

## III. CAPACITY OF DEFENDANTS

A third reason each defendant assigns for the lack of jurisdiction is the naming of the individuals sued here in their private capacities.[6] In Tomko v. Hilbert, 3 Cir. 1961, 288 F.2d 625, the court held that the LMRDA does not create a cause of action against individuals in this manner, but only as union officers.

"... It seems clear that the LMRDA did not create a right to sue officers of unions for individual torts committed by them in their private capacities, but only for their violation of a member's LMRDA protected rights where they, in committing such violations, have acted under color of and in abuse of their authority as union officers." Eisman v. Baltimore Regional Joint Board of the Amalgamated Clothing Workers, supra, 352 F.Supp. at 437. (Citations omitted.)

Defendants Ness and Bortner are not alleged to be officers of either the Local or the International. Moreover, there is no allegation that they acted under color of a union office to violate plaintiff's Title I-guaranteed rights.

Therefore as to these defendants, the complaint is totally defective.

The other individual defendants are asserted to hold the following offices: Local President, Local Acting Business Agent and International District Board Member. Accepting the facts alleged in the complaint—as we must—it is clear that they would be liable under Tomko v. Hilbert, supra. *Tomko* would uphold a complaint alleging that "a labor organization or an official or agent acting in its behalf has instigated or performed the acts complained of." 288 F.2d at 629.

Here, there are allegations in the complaint that ". . . the . . . defendant Local and defendants Hollinger and Stephens, acting under the direct, unlawful influence and control of defendant Rajoppi, then and there representing said defendant International Union, denied plaintiff the right of free speech and assembly, . . . by failing to allow a Motion to Reconsider the . . . illegal removal of plaintiff from his office . . . although the Motion was properly before the Meeting . . . ." The complaint does not contain, with as great particularity as for the defendant Rajoppi, statements that the two named Local officers were acting under color of their union positions.[7] Nevertheless, the wrongs alleged are not primarily private conduct, such as the tort of assault as in Tomko v. Hilbert, supra. These are activities undertaken as union officials—which these defendants were—and they therefore will support a complaint under the LMRDA.

## IV. OTHER CONTENTIONS

Other contentions of the defendants may be disposed of summarily.

Defendant Local asserts that the failure to name it in the body of the

---

6. This contention is irrelevant to plaintiff's claim against the Local and the International.

7. Paragraph 10 charges that "the defendants Hollinger [local president] and Stephens [acting business representative] picked biased and partial Trial Committees to try the plaintiff. . . ."

complaint defeats jurisdiction for failure to state a complaint on which relief can be granted. However, this issue was neither briefed nor argued at the hearing held on its motion. Therefore, in accordance with Rule 301.01(d), Rules of Court, U.S.D.C., M.D.Pa., the motion with respect to this issue is deemed to have been withdrawn.

■ The remaining objections of the parties relate to the service of process. Service was made upon the two out-of-state defendants under the Pennsylvania "long arm statute," 42 P.S. § 8301 et seq., pursuant to Fed.R.Civ.P. 4(d)(7).[8] These parties argue that this service is defective and therefore must be quashed.

It is not argued that the long arm statute is unconstitutional, see Pennoyer v. Neff, 1877, 95 U.S. 714, 24 L.Ed. 565; International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95; McCully-Smith Associates, Inc. v. Armour and Co., W.D.Pa.1973, 358 F. Supp. 331, nor that there was not compliance with the procedural requirements of the statute. See Saccamani v. Robert Reiser & Co., Inc., W.D.Pa.1972, 348 F. Supp. 514; 42 P.S. §§ 8307, 8308; 28 U.S.C.A. Fed.R.Civ.P. 4(d)(7). The International does argue that the Pennsylvania statutes provide no basis for service upon a nonresident unincorporated association. Rajoppi argues that if there is no basis for jurisdiction over the International, service against him must be quashed.

Sections 8302–04, 42 P.S., define the requisite jurisdictional nexus in three situations—where the defendant is asserted to have: committed a tortious act, done business, or caused harm within the state. Here, the complaint invokes jurisdiction under each of these bases. The title of each section refers to "individuals," and the textual subject of each is "Any nonresident of this Commonwealth." Section 8303 is set out in the margin.[9] International contends since each section's title is directed to individuals, none refers to a labor union. It argues that this is so because the legislature intended to exclude unincorporated associations from the purview of these sections.

We cannot accept the view that the legislature intended such a restrictive definition, even assuming the sections' titles are intended to be restrictive in some way. A careful review of the Long Arm sections shows that the legislature created two classes of potential nonresident defendants. Foreign corporations are categorized in §§ 8301 and 8302. The remaining sections are all applicable to another class. 42 P.S. §§ 8303–05. We cannot conclude that by using "individuals," the legislature intended to immunize nonresident partnerships, joint ventures and trusts, as well as labor unions, from liability for injury

---

8. Rule 4(d) provides:
"... Service shall be made as follows:

(7) Upon a defendant of any class referred to in paragraph (1) or (3) [unincorporated association] of this subdivision of this rule, it is also sufficient if the summons and complaint are served in the manner prescribed by any statute of the United States or in the manner prescribed by the law of the state in which the district court is held for the service of summons or other like process upon any such defendant in an action brought in the courts of general jurisdiction of that state."

9. Section 8303 of Title 42 of Purdon's Pennsylvania Statutes provides:

"Commission of tortious acts by individuals
Any nonresident of this Commonwealth who, acting individually, under or through a fictitious business name, or through an agent, servant or employee, shall have committed a tortious act within this Commonwealth on or after August 30, 1970, or any such individual who at the time of the commission of the tortious act within this Commonwealth was a resident of this Commonwealth who shall subsequently become a nonresident or shall conceal his whereabouts, shall be conclusively presumed to have designated the Department of State as his agent for the receipt of service of process in any civil action or proceeding instituted in the courts of this Commonwealth against such individual."

to residents of the state. In another context, the Pennsylvania supreme court held,

"... We do not think the word *individuals* is to be understood in a sense so narrow as that which the respondents would assign to it. It means something more than single persons. It would not exclude a partnership. ..." Pennsylvania R. R. Co. v. Canal Commissioners, 1852, 21 Pa. 9, 20.

It is clear that by using "individuals" in this manner the title was intended to cover lawsuits against all nonresidents who are not corporations. Thus, the predecessor to the current long arm statute has been held to cover partnerships, Saccamani v. Robert Reisner & Co., Inc., W.D.Pa.1972, 348 F.Supp. 514, and we hold that it covers labor unions.

An appropriate order will be entered.