**GENERAL HEAT AND POWER CO., INC., Appellant,**

v.

**DIVERSIFIED MORTGAGE INVESTORS.**

No. 76–1684.

United States Court of Appeals, Third Circuit.

Submitted Under Third Circuit Rule 12(6) Jan. 14, 1977.

Decided March 22, 1977.

Daniel J. DiGiacomo, Philadelphia, Pa., Frank A. Trainor, Jr., Mount Pocono, Pa., for appellants.

S. Keene Mitchell, Jr., Darling & Mitchell, Wilkes-Barre, Pa., for appellee.

Before GIBBONS and GARTH, Circuit Judges, and BECHTLE,* District Judge.

## OPINION OF THE COURT

GIBBONS, Circuit Judge.

■ The plaintiff, General Heat and Power Company, Inc., a Pennsylvania corporation, appeals from an order granting the motion of Diversified Mortgage Investors, a Massachusetts business trust, to dismiss the complaint against it for insufficiency of process. Service of process was attempted pursuant to Fed.R.Civ.P. 4(e) and the Pennsylvania long arm statute, 42 Pa.C.S.A. §§ 8301–8310. The district court held that the attempt was ineffectual because Diversified was not subject to process under that statute.[1] We reverse.

---

* Sitting by designation.

1. Neither in the district court nor here did Diversified contend that there was any question of subject matter jurisdiction, and we do not address that question on the present record. Our holding on service of process does not determine subject matter jurisdiction. On that issue, we merely note the following rules: under Fed.R.Civ.P. 17(b), Diversified's capacity to be sued as an entity is governed by Pennsylvania law. *Underwood v. Maloney,* 256 F.2d 334,

337–38 (3d Cir. 1958). This includes, in a diversity case, Pennsylvania's conflict of laws rule. *Klaxon v. Stentor Electric Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Van Sant v. American Express Co.,* 169 F.2d 355, 363 (3d Cir. 1948). Although the citizenship of an unincorporated association is that of its members, *United Steelworkers of America, AFL–CIO v. R. H. Bouligny, Inc.,* 382 U.S. 145, 86 S.Ct. 272, 15 L.Ed.2d 217 (1965); *Chapman v. Barney,* 129 U.S. 677, 9 S.Ct. 426, 32 L.Ed. 800 (1889), the citizenship of a trust is

The district court concluded that Diversified was not amenable to service of the instant complaint under any provision of the Pennsylvania longarm statute.[2] That complaint charges that Diversified, which is in the business of real estate mortgage financing, entered into a construction loan agreement with a Pennsylvania mortgagor under which it agreed to advance $15,500,000, secured by a duly executed mortgage on premises in Luzerne County, Pennsylvania. It further alleges that General Heat and Power, in reliance on the loan agreement, undertook to make improvements on the mortgaged premises by erecting buildings thereon. The complaint then alleges:

10. The defendant, with intent to defraud the plaintiff, failed to notify the plaintiff that it had decided not to advance further funds to Eastern Pennsylvania Marine Properties, Inc.

11. The failure of the defendant to notify the plaintiff was done willfully, maliciously and intentionally and was done for the specific purpose of inducing the plaintiff, as well as other contractors, materialmen and suppliers, in the expectation of payment and with a view toward enhancing the security interest held by the defendant in the subject premises.

12. As a result of the fraudulent actions on the part of the defendant, the plaintiff continued to provide services and materials pursuant to the terms and provisions of plaintiff's agreement with Eastern Pennsylvania Marine Properties, Inc., throughout the months of April, May, June, July and August, 1974, and contributed labor, services and materials in the amount of Two Hundred Sixty-eight Thousand Nine Hundred Nine Dollars and Fifty-seven Cents ($268,909.57).

App. at 6a.

The gravamen of the first count,[3] then, is that an out of state lending institution, holding a security interest in real estate in Pennsylvania, fraudulently induced a Pennsylvania contractor to make improvements which enhanced the value of the security interest, by misrepresenting or concealing that it did not intend to perform a loan agreement with the owner in accordance with its undertaking.

█ If we regard Diversified as a foreign corporation which has not qualified to do business in Pennsylvania, service of process is governed by 42 Pa.C. § 8302, which authorizes service on any corporation which has done any business in the Commonwealth. Doing business is broadly defined in 42 Pa.C. § 8309(a), and § 8309(b) provides:

In addition to the provisions of subsection (a) of this section the jurisdiction and venue of courts of the Commonwealth shall extend to all foreign corporations and the powers exercised by them to the full extent allowed under the Constitution of the United States.

Thus, Pennsylvania has adopted by reference the limits of its long arm jurisdiction over foreign corporations imposed by the due process clause of the fourteenth amendment. There is, however, an exception which Diversified claims is applicable, for § 8309(c) provides:

Notwithstanding any other provision of this section, for the purpose of determining jurisdiction of courts within this Commonwealth, . . . acquiring real estate and mortgages, and other liens thereon, and personal property and security interest therein, . . . or collecting debts and enforcing mortgages and

---

generally that of the trustee. 3A J. Moore, Federal Practice, ¶ 17.04, p. 111 (1974). *But cf. Fox v. Prudent Resources Trust,* 382 F.Supp. 81, 92–93 (E.D.Pa.1974) (applying *Bouligny* to a business trust). We express no judgment, however, on the substantive law to be applied in determining capacity to be sued. Neither, should Massachusetts law be deemed relevant under *Klaxon v. Stentor,* do we intimate any opinion on the capacity, under Massachusetts law, of a Massachusetts business trust to be

sued. Nor do we intimate whether if under state law a Massachusetts trust can sue as an entity it can thereby qualify for diversity jurisdiction.

2. The district court opinion is reported. 65 F.R.D. 697 (M.D.Pa.1975).

3. A second count alleges an alternative theory of liability which, for present purposes, need not be addressed.

rights in property securing the same by any foreign corporation shall not constitute "doing business."

Diversified urges that it should be treated as a foreign corporation and should be protected by the exception. Section 8309(c) expresses a Pennsylvania public policy of encouraging the inflow to the Commonwealth of capital from out of state financial institutions, who can lend on the security of property with a Pennsylvania situs without thereby becoming subject to Pennsylvania long arm jurisdiction. But we do not think the exception applies to the instant complaint, for it does not rely solely on the fact that Diversified was doing business in Pennsylvania. Rather it alleges a fraudulent representation or fraudulent concealment elsewhere, relied on in Pennsylvania, and causing harm there. The fraudulent misrepresentation is alleged to have occurred after Diversified took its security interest, not in connection with the original loan agreement, and not in connection with a foreclosure proceeding. By its terms § 8309(c) is inapplicable to the fraud alleged.

The question is not whether, if it did what is charged in paragraphs 10 through 12 of the complaint Diversified was doing business, but whether, assuming it to be a corporation, the fourteenth amendment as incorporated in § 8309(b) permits Pennsylvania to litigate the dispute. The limits of Pennsylvania's adjudicating power are found in *International Shoe Co. v. Washington*, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and its progeny. *See Jonnet v. Dollar Savings Bank of City of New York*, 530 F.2d 1123, 1130 (3d Cir. 1976) (concurring opinion). The due process inquiry focuses on the fairness of requiring the foreign defendant to answer in a given forum, considering the impact or lack thereof of his activities on that forum.

Here it is alleged that a foreign owner of a security interest in Pennsylvania real estate made false representations outside the Commonwealth which caused a Pennsylvania plaintiff to improve the Pennsylvania real estate and enhance the value of the security interest. No other jurisdiction, it seems to us, has any higher claim to the exercise of decisional responsibility over the resulting dispute, for the harm is alleged to have occurred to a Pennsylvania plaintiff in Pennsylvania, and the fruits of the wrong inured to the defendant's benefit in Pennsylvania. Thus, if Diversified is regarded as a corporation, it is by virtue of 42 Pa.C.S.A. § 8309(b) subject to service of process.

If, on the other hand, Diversified is not a corporation, Pennsylvania has not attempted to cast so wide a jurisdictional net as in § 8309(b). It has dealt separately with the commission of tortious acts by individuals in the Commonwealth, 42 Pa.C.S.A. § 8303, with doing business by individuals, 42 Pa.C.S.A. § 8304, and with causing harm in the Commonwealth by individuals. 42 Pa.C.S.A. § 8305. The latter provision is applicable to the allegations of paragraphs 10–12 of the complaint. It reads:

> Any nonresident of this Commonwealth who, acting outside of this Commonwealth, individually, under or through a fictitious business name, or through an agent, servant or employee, shall have caused any harm within this Commonwealth . . . shall be subject to service of process in any civil action or proceeding instituted in the courts of this Commonwealth arising out of or by reason of any such conduct. . . .[4]

The district court, focusing on the language "acting outside of this Commonwealth individually," held that Diversified acted as an entity of some kind, and not "individually." The effect of that interpretation, if § 8309(b) only applies to business entities that are true corporations, is to leave partnerships, joint stock companies, business trusts and similar unincorporated entities entirely outside the reach of Pennsylvania's long arm statute. No authority is cited for that interpretation, and in our research we have found none. It seems to us a patently unreasonable construction of the Pennsyl-

---

4. *See generally* Comment, Long-Arm Wrestling With Pennsylvania's Jurisdiction Over Nonresi-dent Individuals: The Reach of Section 8305, 21 Vill.L.Rev. 410 (1975–76).

vania statutory scheme to hold that such an enormous gap in coverage was intended. Such a restrictive interpretation of the "acting individually" language was rejected in the opinion of Judge Sheridan in *Sipe v. Local Union No. 191 Carpenters and Joiners,* 393 F.Supp. 865 (M.D.Pa.1975). He declined to hold that the Pennsylvania long arm statute provided no means of service upon a nonresident unincorporated association, reasoning:

We cannot accept the view that the legislature intended such a restrictive definition, even assuming the sections' titles are intended to be restrictive in some way. A careful review of the Long Arm sections shows that the legislature created two classes of potential nonresident defendants. Foreign corporations are categorized in §§ 8301 and 8302. The remaining sections are all applicable to another class. 42 Pa.C.S.A. §§ 8303–05. We cannot conclude that by using "individuals," the legislature intended to immunize nonresident partnerships, joint ventures and trusts, as well as labor unions, from liability for injury to residents of the state. In another context, the Pennsylvania supreme court held,

". . . We do not think the word *individuals* is to be understood in a sense so narrow as that which the respondents would assign to it. It means something more than single persons. It would not exclude a partnership. . . ." *Pennsylvania R. R. Co. v. Canal Commissioners,* 1852, 21 Pa. 9, 20.

It is clear that by using "individuals" in this manner the title was intended to cover lawsuits against all nonresidents who are not corporations. Thus, the predecessor to the current long arm statute has been held to cover partnerships, *Saccamani v. Robert Reisner & Co., Inc.,* W.D.Pa.1972, 348 F.Supp. 514, and we hold that it covers labor unions.

393 F.Supp. at 873–74.

That analysis of the statutory scheme is persuasive, and we adopt it as the most likely prediction of what the Supreme Court of Pennsylvania would hold. If Diversified is not a corporation, it is an unincorporated entity falling within § 8305.

Thus the district court erred in dismissing the complaint for lack of service of process. Diversified, whatever it is, was properly before the court on the first count, and if service of process on that count was proper the district court certainly could adjudicate the second count which, though proceeding on a different theory, factually was closely related to the first.

The order dismissing the complaint will be reversed.